[No. 13181-1-II.   Division Two.   July 3, 1991.]

THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Appellant,* v. THE STATE PERSONNEL BOARD, ET AL, *Respondents.*

*Kenneth O. Eikenberry, Attorney General,* and *David R. Minikel, Assistant,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Spencer W. Daniels, Assistant,* for respondent Personnel Board.

*Edward E. Younglove III* and *Swanson Parr Cordes Younglove Peeples & Wyckoff,* for respondents Alderman, et al.

WORSWICK, C.J.—A collective bargaining agreement between the Department of Social and Health Services and

its employees provided for resolution of grievances by arbitration. The agreement named the State Personnel Board as arbitrator. The Department now appeals the Superior Court's refusal to review an arbitration award by the Board. We affirm.

The employees had worked for the Medical Lake School District before the Department appointed them to positions at Department operated schools. Upon the appointment, the Department credited the employees with the seniority and accrued vacation and sick leave balances that they had acquired while employed by Medical Lake. The Department later decided that it had no authority to grant such employment credits because, under the merit system rules (WAC 356), such credits could be extended only to state civil service employees. The employees in question had been "public employees" (RCW 28A.01.055), but not "state employees", while employed by Medical Lake. RCW 41.06. The Department rescinded the credits. The employees filed a grievance.

Article 25 of the collective bargaining agreement defined "grievance" as:

> a contention of misapplication, violation *or inequitable application* of: State Civil Service Law, State Personnel Board Merit System Rules, Compensation Plan, Personnel Board Policies, Articles of this Agreement, Department and/or Institution policies and operating procedures or practices pertaining to personnel and policies and procedures negotiated under Article 6, Union–Management Relations.

(Italics ours.) Step 4 of the agreement's grievance process provided:

> If the employee disagrees with the decision of the Secretary [of DSHS] he or she may exercise his or her right to mediation and arbitration as provided by the Merit System Rules.

One of those rules, WAC 356–42–050(2), provides that as part of collective bargaining agreements:

> Grievance procedures shall also provide for arbitration by the [State Personnel] board in accordance with WAC 356–42–055.

The employees pursued the Department's action to an arbitration award in which they substantially prevailed.

The Department petitioned the Superior Court for judicial review, contending that review was available under either the court's inherent power of review, the former administrative procedure act (former RCW 34.04.130 (Laws of 1967, ch. 237, § 6)), or the Uniform Declaratory Judgments Act, RCW 7.24.010. The Superior Court dismissed the petition, holding that neither the administrative procedure act nor the Uniform Declaratory Judgments Act applied, and that exercise of its inherent power of review was not appropriate. We find no reversible error in the court's disposition of the arguments based on the acts; and we hold that the court's refusal to exercise inherent review was tenable, because, under the common law standard that applies to this arbitration award, review was unnecessary.

We can begin by quickly disposing of the Department's secondary argument,[1] that the court erred in holding the former APA inapplicable. The court did not err. Under former RCW 34.04.130, judicial review was available to "[a]ny person aggrieved by a final decision in a contested case".

> "Contested case" means a proceeding before an agency in which an opportunity for a hearing before such agency is required by law or constitutional right prior or subsequent to the determination by the agency of the legal rights, duties, or privileges of specific parties.

Former RCW 34.04.010(3). Although this arbitration involved a hearing before an agency, the Board, that hearing was not "required by law or constitutional right". Rather, it resulted from the contractual agreement between the Department and its employees.

The Department's paramount assertion is that the court erred by refusing to exercise its inherent power of review. As a general proposition:

> the courts always have inherent power to review agency action to the extent of assuring that it is not arbitrary and

---

[1] The Department has not discussed the court's refusal to apply the Uniform Declaratory Judgments Act, and that issue is deemed waived. *Van Geest v. Willard,* 27 Wn.2d 753, 769, 180 P.2d 78 (1947).

capricious. . . . The courts' inherent power of review extends to administrative action which is contrary to law as well as that which is arbitrary and capricious."

*International Fed'n of Professional & Technical Eng'rs, Local 17 v. State Personnel Bd.,* 47 Wn. App. 465, 472, 736 P.2d 280, *review denied,* 108 Wn.2d 1036 (1987) (quoting *Pierce Cy. Sheriff v. Civil Serv. Comm'n for Sheriff's Employees,* 98 Wn.2d 690, 694, 658 P.2d 648 (1983)). *See also Williams v. Seattle Sch. Dist. 1,* 97 Wn.2d 215, 221–22, 643 P.2d 426 (1982). However, the superior court may in its discretion refuse to exercise its inherent powers of review if tenable reasons support that refusal. *Bridle Trails Comm'ty Club v. Bellevue,* 45 Wn. App. 248, 252, 724 P.2d 1110 (1986).

█ Our task is to determine whether the Superior Court's refusal to exercise inherent review was tenable. This seemingly simple task, however, requires us to inquire at length into what, if any, judicial review of the arbitration award is available. Such an exercise is necessary because inherent review is not only unavailable if tenable reasons support a refusal to review, but it is also rarely available if review is specifically provided for elsewhere. *Bridle Trails,* 45 Wn. App. at 253.

The parties' collective bargaining agreement does not mention judicial review; it refers only to the merit system rules. One of those rules, WAC 356–42–055, specifies the steps leading to the arbitration, but does not mention post-arbitration procedures.[2] The agreement itself, therefore, affords no specific authority for judicial review.

Similarly, the general arbitration statute, RCW 7.04, is inapplicable because RCW 7.04.010 says:

> The provisions of this chapter shall not apply to any arbitration agreement between employers and employees or between employers and associations of employees, and as to any such agreement the parties thereto may provide for any method and procedure for the settlement of existing or future

---

[2]After this arbitration, the Board enacted WAC 356–42–055(9), which provides that if the Board conducts the arbitration, "a final and binding decision will be issued." The rule still does not mention judicial review of the Board's decision.

disputes and controversies, and such procedure shall be valid, enforceable and irrevocable save upon such grounds as exist in law or equity for the revocation of any agreement.

Although RCW 7.04.010 excludes labor arbitrations,[3] the parties can agree to make the procedures of RCW 7.04 applicable to a collective bargaining agreement. *Greyhound Corp. v. Division 1384 of Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees,* 44 Wn.2d 808, 812–13, 271 P.2d 689 (1954); *Sheet Metal Workers Int'l Ass'n, Local Union 150 v. Air Sys. Eng'g, Inc.,* 831 F.2d 1509 (9th Cir. 1987). This collective bargaining agreement, however, contains no such provision.

For want of any specific method, therefore, we conclude that inherent review is the appropriate way for a court to correct an arbitrator's error in the circumstances presented by this case. *Cf. Grays Harbor Cy. v. Williamson,* 96 Wn.2d 147, 153–54, 634 P.2d 296 (1981) (if meaningful review otherwise available, certiorari inappropriate). The Superior Court's refusal to exercise review, however, was tenable because the common law arbitration standard, which we hold applicable to this case, left nothing for the court to correct.

A number of cases proclaim that, because of arbitration statutes, common law arbitration no longer exists in Washington. *See, e.g., Greyhound Corp.,* 44 Wn.2d at 813. This generalization is not justified, for the common law remains to fill interstices that legislative enactments do not cover. RCW 4.04.010; *Williamson,* 96 Wn.2d at 154; *Green Mt. Sch. Dist. 103 v. Durkee,* 56 Wn.2d 154, 161, 351 P.2d 525 (1960) (common law unaltered if consistent with interpretation of statute); *Cooper v. Runnels,* 48 Wn.2d 108, 113, 291 P.2d 657, 57 A.L.R.2d 597 (1955) (effect of wrongful death statutes on common law actions).

---

[3]Labor arbitrations are generally regulated under RCW 49.08, which covers general labor disputes. However, RCW 41.56.125, regarding public employees' collective bargaining agreements, provides that RCW 49.08 is inapplicable to arbitrations under those agreements. There is no such parallel provision in the civil service laws, RCW 41.06.

Further, cases pronouncing the total demise of common law arbitration must be considered in the context of the statutes then in effect. Between 1881 and 1943, Rem. Rev. Stat. § 420 *et seq.* (Code of 1881, § 264) governed all arbitrations; accordingly, it controlled all issues concerning the availability of and procedure for any arbitration. Typical of cases decided under this legislation were *Puget Sound Bridge & Dredging Co. v. Lake Wash. Shipyards,* 1 Wn.2d 401, 405, 96 P.2d 257 (1939); *Smith v. Department of Labor & Indus.,* 176 Wash. 569, 571, 30 P.2d 656 (1934); *Puget Sound Bridge & Dredging Co. v. Frye,* 142 Wash. 166, 177, 252 P. 546 (1927); *Suksdorf v. Suksdorf,* 93 Wash. 667, 670, 161 P. 465 (1916); and *Dickie Mfg. Co. v. Sound Constr. & Eng'g Co.,* 92 Wash. 316, 319, 159 P. 129 (1916). These cases all contained the standard eulogy for the common law of arbitration.

The comprehensive statutory coverage, however, was supplanted by Laws of 1943, ch. 138 (Rem. Rev. Stat. § 430-1 *et seq.* (Supp. 1943)), ultimately codified as RCW 7.04. This new enactment was not comprehensive, and the first case under the new statute held only that collective bargaining agreements containing arbitration clauses were not subject to "the common–law rule permitting revocation [of arbitration] at the will of the parties." *Greyhound,* 44 Wn.2d at 813.[4] Our historical foray discloses no case that has held common law arbitration principles inapplicable to resolve a problem where the arbitration statute is also inapplicable.

*Carey v. Herrick,* 146 Wash. 283, 263 P. 190 (1928), which recognized a common law arbitration agreement notwithstanding statutes governing arbitration,[5] is significant

---

[4]Significantly, *Greyhound* also held that the statutory procedure for obtaining a stay of arbitration was not available because the arbitration clause in the collective bargaining agreement neither contained such a procedure nor made the statutory procedure expressly applicable.

[5]The agreement was made in Idaho, and the court ventured no discussion of its validity. We surmise that the parties did not contend that there could be no

for our purposes because of its guidance concerning common law judicial review of an arbitration award:

> Almost universal authority holds that arbitrators are, when acting under unlimited authority, . . . final judges of both the law and the facts, and that no review will lie for a mistake in either. They may, if they wish, disregard the law entirely and decide issues according to their own notion of what is right or equitable between the parties. An exception to this rule, however, is well grounded in our jurisprudence. If the arbitrator recite in his award that, in determining the result, he followed a certain method or a certain rule of law, it will be presumed that it was so set out that, if there is error, it may be corrected. For it becomes apparent that, if there is a mistake in applying the law or the facts under the method used and set out, the award is not what the arbitrator intended to make.

*Carey,* 146 Wash. at 292.

Under the common law arbitration standard, the Board in this case constituted the "final judges of both the law and the facts," unless there was a conflict between the method set out in the award and the award itself. There was no conflict.

The Department argues that the Board's explicit recognition that the Department lacked authority to grant the credits shows that the award was erroneous. We disagree. The Board was simply recognizing the problem; it did not thereby identify an illegal method or principle by which it resolved the problem.

The Board followed the collective bargaining agreement, which contemplated adjustment of a "grievance" for an "inequitable application" of the civil service laws and the merit system rules. The Board determined that the laws and rules were being inequitably applied to these employees, and it did what an arbitrator is expected to do: it fashioned a remedy.

█ The scope of an arbitrator's authority is "'a question of contract interpretation that the parties have delegated to the arbitrator.'" *Local Union 77, Int'l Bhd. of Elec. Workers v. PUD 1,* 40 Wn. App. 61, 66, 696 P.2d 1264 (1985)

---

common law arbitration of an Idaho contract, even though Idaho had an arbitration statute.

(quoting *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers,* 461 U.S. 757, 76 L. Ed. 2d 298, 306, 103 S. Ct. 2177 (1983)). The Board's authority flowed from the collective bargaining agreement. The employees submitted to the Board the question of whether they had suffered an inequitable application of the civil service laws and rules, and the Department agreed to have the Board resolve the question. The Department cannot now challenge a decision of the arbitrator that fell within the authority it voluntarily conferred upon the arbitrator.

If the Department believed that there was no remedy for the employees' complaint, and therefore nothing for the arbitrator to resolve, it could have sought declaratory relief *before* the arbitration took place. Concerning the position it now advances, then, it had an adequate remedy that it failed to pursue. The Superior Court recognized that this matter had properly been resolved without court intervention, as is expected of arbitration. *See Williamson,* 96 Wn.2d at 153.[6] The Superior Court's refusal to exercise its inherent power of review was therefore tenable.

Affirmed.

PETRICH and ALEXANDER, JJ., concur.

---

[6] The common law standard, insofar as it contemplates judicial intervention, does not appear to differ from the statutory standard for judicial review. Under either standard, the merits are off limits; the reviewing court will examine only the procedure. *See Westmark Properties, Inc. v. McGuire,* 53 Wn. App. 400, 402, 766 P.2d 1146 (1989). In this case, the Board's procedure was plainly not "contrary to law", and there was no need for an exercise of inherent review.