[Civ. No. 38148. First Dist., Div. One. Mar. 31, 1977.]

LaBERTA L. ABBOTT, Plaintiff and Appellant, v.
CALIFORNIA STATE AUTOMOBILE ASSOCIATION,
Defendant and Respondent.

[Civ. No. 38228. First Dist., Div. One. Mar. 31, 1977.]

LaBERTA L. ABBOTT, Plaintiff and Appellant, v.
CALIFORNIA STATE AUTOMOBILE ASSOCIATION,
Defendant and Respondent;
LIBERTY MUTUAL INSURANCE COMPANY,
Defendant and Appellant.

**COUNSEL**

Nichols, Williams, Morgan & Digardi and J. Michael Brown for Plaintiff and Appellant.

L. F. Haeberle III, John L. Winingham and Clyde Thompson for Defendant and Appellant.

Staiger, Yank, Molinelli & Preston and Robert W. Yank for Defendant and Respondent.

---

**OPINION**

**MOLINARI, P. J.**—These consolidated cases arise out of a collision which occurred on September 26, 1972, in which LaBerta L. Abbott was driving a delivery van owned by her employer, L'eggs Products, Inc. when it was struck by a large truck whose driver gave a false name and address. The delivery van was insured by Liberty Mutual Insurance Company (hereinafter Liberty). Abbott, at the time of the accident, owned an automobile which was insured by California State Automobile Association (hereinafter CSAA). It is stipulated that the truck which struck the van was a hit-and-run vehicle.

Abbott made a claim for damages for her injuries with CSAA under the uninsured motorist's coverage of her policy with said insurer. The claim was denied on the basis that Liberty rather than CSAA provided primary coverage for Abbott's injuries. Abbott then invoked the arbitration provisions provided for under her policy. The parties to said arbitration proceedings were Abbott and CSAA. The issue of coverage was submitted to the arbitrator who found that Liberty was the primary carrier for the accident in question and therefore denied Abbott's claim against CSAA.

Abbott then filed a petition to vacate the award of the arbitrator, for a rehearing and a complaint for declaratory relief naming CSAA and Liberty as defendants. CSAA, in turn filed a petition to confirm the award of the arbitrator. A judgment was entered confirming the award of the arbitrator and a declaratory judgment was rendered declaring that the insurance policy issued by CSAA provided coverage to Abbott for the accident and that Liberty's policy did not provide coverage for the accident.

Abbott filed an appeal from the judgment confirming the award and from the declaratory judgment. Liberty has cross-appealed from a judgment confirming the arbitrator's award. The parties have stipulated that the appeals and the cross-appeal be consolidated on appeal.

At the trial in the superior court it was stipulated that Liberty's policy contained on its face no uninsured motorist endorsement and that CSAA

had issued a policy which was in effect at the time of the accident containing an uninsured motorist endorsement. It was further stipulated that Liberty's policy did not have an uninsured motorist endorsement because on February 24, 1972, L'eggs Products, Inc. wrote to Liberty as follows: "Under our L'eggs Products, Inc. automobile policy, we request that uninsured motorists coverage not be carried except in states where such coverage is mandatory." It was also stipulated that Liberty was not a party to the arbitration proceedings.

The court below determined that the arbitrator made an error in law in finding that Liberty's policy provided for uninsured motorist coverage but that it was without power to set aside the arbitration award. Abbott contends that the trial court did have such power. She places reliance on subdivision (d) of Code of Civil Procedure section 1286.2, which provides that the court shall vacate the award if the court determines that "The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; . . ." Abbott bases her contentions on this subdivision, contending that the arbitrator exceeded his powers in that he failed to determine the matter in accordance with law.

In support of her position that the court had the power to vacate the arbitration award, Abbott relies primarily on *Jefferson Ins. Co.* v. *Superior Court,* 3 Cal.3d 398 [90 Cal.Rptr. 608, 475 P.2d 880], *Allen* v. *Interinsurance Exchange,* 275 Cal.App.2d 636 [80 Cal.Rptr. 247], and *Campbell* v. *Farmers Ins. Exch.,* 260 Cal.App.2d 105 [67 Cal.Rptr. 175]. CSAA, on the other hand, contends that the decision of an arbitrator may not be set aside for an error of law, relying principally upon *State Farm Mut. Auto. Ins. Co.* v. *Guleserian,* 28 Cal.App.3d 397 [104 Cal.Rptr. 683], and *Durand* v. *Wilshire Ins. Co.,* 270 Cal.App.2d 58 [75 Cal.Rptr. 415].

In *Guleserian* the arbitrator erroneously interpreted the Insurance Code as imposing absolute liability on the carrier for uninsured motorist coverage despite his finding that the insured was contributorially negligent. On the carrier's petition the trial court vacated the award. The Court of Appeal reversed the holding that the arbitrator, in ruling on the matter of absolute liability, ruled on a matter that was properly before him and that, therefore, his award was not subject to being set aside on the theory that in ruling on the matter the arbitrator had exceeded his powers because it was based on an error in law. The reviewing court stated: "Section 1286.2 describes the only grounds for setting aside an

arbitration award. [Citation.] An error of law committed by the arbitrator, no matter how gross, is not one of them. [Citations.]" (28 Cal.App.3d 397, 402.)[1]

In *Durand* arbitration was held pursuant to compulsory provisions of the Insurance Code requiring coverage for bodily injury from an uninsured motorist, as well as under the insurance policy. The issue of collateral estoppel was tendered to the arbitrator without objection on the insured's part. The arbitrator determined that the doctrine of collateral estoppel applied. The superior court denied a petition to vacate the award of the arbitrator. The order was affirmed notwithstanding that the arbitrator erred in deciding that collateral estoppel applied on the basis that the arbitrator's decision was not subject to judicial review because it involved an error in law. (270 Cal.App.2d at pp. 62-63.) A close reading of *Durand* discloses that the decision turns on the fact that the issue of collateral estoppel was properly before the arbitrator without objection on the insured's part and that, accordingly, the arbitrator decided a point which was properly before him even if he did so incorrectly.[2] (At p. 60.)

In *Jefferson* it was held that the court properly vacated the appraisal award because the appraisers based the award on a misconception of law. The thrust of the holding in *Jefferson* is that the appraisers *exceeded their powers by making an error in law*. As indicated by the Supreme Court, the appraisers were authorized to determine only a question of fact, namely, the actual cash value of the building involved, and that it was not their function to resolve questions of coverage and interpret provisions of the policy. (3 Cal.3d at p. 403.) The reviewing court observed that "Where an appraisal award is based upon a misconception of the law, this fact may be proved to the court by extrinsic evidence, including a declaration of one of the appraisers. The declaration of an appraiser is properly received to show what the appraisers considered the issue to be, for the purpose of determining whether they exceeded their powers by making an error of law. [Citations.]" (At p. 403.)

In *Campbell* the appellate court took cognizance of the general rule that "While ordinarily where an issue is within the scope of the submission agreement and the parties have agreed to be bound by an award, errors in law or in fact committed by the arbitrator are not

---

[1]No petition for a hearing in the Supreme Court was filed in *Guleserian*.

[2]In *Durand* a petition for a hearing by the Supreme Court was denied.

grounds for vacating the award [citations]" but held that "where the error appears on the face of the award and causes substantial injustice, the award may be vacated. [Citations.]" (260 Cal.App.2d 105, 111-112.) In that case the appellant insurer petitioned the lower court to correct the arbitration award on the grounds that the arbitrator exceeded his powers in awarding a sum in excess of the policy limits. On appeal, the court reversed the judgment confirming the award with directions to correct the award and enter judgment accordingly. The reviewing court determined, moreover, that there was nothing in the record to show that the question of the policy limits was an issue before the arbitrator, that it was litigated before him or decided by him.[3] (At p. 112.)

Adverting to the *Allen* case we find that there the arbitrator had determined that guest passengers were "not legally entitled to recover damages" under *the uninsured motorist coverage of the host driver* because the driver's contributory negligence was imputed to the guests. Thereafter the arbitrator realizing that the negligence of the driver of an automobile in which a guest is riding is not to be imputed to the guest notified the claimants that he had made an error of law. The claimants thereupon petitioned the superior court for an order vacating the award. At the hearing the court considered the written statement of the arbitrator to the effect that he was mistaken as to the law to be applied. The award was vacated and the insurer appealed. The reviewing court affirmed the order vacating the award upon the basis that the policy required that such claims be submitted to arbitration and contemplated that the "legally entitled" issue would be determined according to principles of law, and when in addition to the fact of the error in law appearing on the face of the award the arbitrator stated in writing that the award was based on his error in applying a rule of law. (275 Cal.App.2d at pp. 639-642.) The appellate court held, further, that the court could properly consider the written statement of the arbitrator that he was mistaken as to the law to be applied and that such statement was not an impeachment of the award but a statement regarding the fact as to what the arbitrator considered was the legal issue submitted to him. (275 Cal.App.2d at pp. 642-644.)[4]

The *Allen* case was distinguished in *Guleserian* which analyzed *Allen* "as standing for no more than that, in limited circumstances and to prevent an injustice, an arbitrator may, within a reasonable but very

---

[3] In *Campbell* a petition for a hearing was denied by the Supreme Court.
[4] No petition for a hearing by the Supreme Court was filed in *Allen.*

short time after he has filed his award, correct it," and stating that "So analyzed, *Allen* does not permit vacation of an arbitrator's award for mistake of law alone, no matter how grievous." (28 Cal.App.3d at p. 403.) This distinction appears to be unsound. *Allen* dealt with a petition of the claimants to vacate the award and not a petition by the arbitrator himself to correct the award.

Adverting to the instant case we observe that the record before us does not disclose what evidence was adduced before the arbitrator or what specific issues were tendered before him. It is apparent from his award that the issue of coverage was presented to him and that in making this determination he had before him both policies, i.e., the Liberty policy and the CSAA policy. It is also apparent that he determined that both policies provided for uninsured motorist coverage but that Liberty's policy was primary and that Abbott was required to look to that policy rather than CSAA's policy for her damages. It is apparently conceded, in view of the stipulations made in the court below, that Liberty's policy showed on its face that there was no uninsured motorist coverage for the insured. Nothing in the record discloses whether the issue of waiver of uninsured motorist coverage by Liberty's insured was tendered to the arbitrator. We apprehend that if such issue was tendered the rationale and holding of *Guleserian* and *Durand* might be applicable because the parties agreed to be bound by the award and a determination that there was no waiver would constitute an error in law not subject to judicial review under these decisions.

We opine, however, that the statement in *Guleserian* that no error of law, no matter how gross, is grounds for setting aside an arbitration award paints with too broad a brush. ■ It is apparent from the holdings in *Jefferson, Campbell,* and *Allen* that in certain circumstances an award based on an error in law may be set aside on the basis that it was in excess of the arbitrator's powers as provided in subdivision (d) of section 1286.2 of the Code of Civil Procedure. In this regard we note the holding in *Allen* that in cases providing for arbitration under policies issued pursuant to the uninsured motorists statutes of this state the arbitrator is required to make the determination that a person is "legally entitled" to recover damages according to principles of law.[5]

In attempting to reconcile *Guleserian* and *Durand* with *Jefferson, Campbell* and *Allen,* we perceive that the distinction lies in the manner in

---

[5]The arbitration clause in the instant case is similar to that in the *Allen* case.

which issues are tendered to the arbitrator and with whether or not the error in law appears on the face of the award. ■ Accordingly, the mere fact that the arbitrator reached an erroneous conclusion based on an error in law which does not appear on the face of the record will not invalidate the award. (*Durand* v. *Wilshire Ins. Co., supra,* 270 Cal.App.2d 58, 63.) On the other hand, where the error appears on the face of the award and causes substantial injustice the award may be vacated. (See *Campbell* v. *Farmers Ins. Exch., supra,* 260 Cal.App.2d 105, 111-112.) ■ We note, too, that where the arbitrator himself has admitted that he has not acted in accordance with principles of law such admission may be received as evidence before the trial court and in such case will be treated as if the error of law appears on the face of the award. (See *Jefferson Ins. Co.* v. *Superior Court, supra,* 3 Cal.3d 398, 403; *Allen* v. *Interinsurance Exchange, supra,* 275 Cal.App.2d 636, 639-641.)

■ In the present case the error in law or the failure to act according to legal principles does not appear on the face of the award nor do we have any admission or statement by the arbitrator that he committed an error in law or that he failed to make a determination according to legal principles. Yet we do have at the hearing before the trial court a stipulation (as well as evidence of the fact) that Liberty's policy does not provide uninsured motorist coverage and that the only such coverage available to Abbott is that provided for in CSAA's policy. This concession, in our opinion, is tantamount to an error in law appearing on the face of the award and has the same efficacy as if the arbitrator himself had stated or admitted that he committed an error in law in making the award. There can be no question that the award of the arbitrator in the present case caused a substantial injustice. To permit the award to stand produces the incongruous result that Abbott will have no uninsured motorist coverage at all. The trial court in the same action and under the issues tendered in the declaratory relief action in which it had all the parties before it determined that Liberty's policy does not provide for such coverage. It determined that such coverage is provided for in CSAA's policy. However, in the same proceeding the trial court confirmed the award which held. that both policies afford such coverage but that Abbott may not invoke CSAA's coverage because Liberty's coverage is primary. The trial court should, therefore, have vacated the award.

In view of the conclusion reached by us we need not discuss Abbott's contention that the refusal to set aside the arbitrator's award constituted a denial of due process and equal protection of the law.

Abbott, notwithstanding the stipulation at the superior court hearing that Liberty's policy did not provide uninsured motorist coverage, contends, alternately, that there was such coverage because there was no valid waiver by L'eggs Products, Inc. of such coverage. Abbott is bound by this stipulation. ■ In any event, there is no merit to this contention which is based on the assertion that in order that there be a valid waiver there must be a written agreement signed by both the insured and the insurer.[6] In the present case the finding of waiver was based on the deletion of uninsured motorist coverage by Liberty upon receipt of a letter from L'eggs Products, Inc. to Liberty requesting that "uninsured motorists coverage not be carried except in states where such coverage is mandatory." In California such coverage is not mandatory. (Ins. Code, § 11580.2.)

The same contention here made by Abbott was made and rejected in *Holland* v. *Universal Underwriters Ins. Co.,* 270 Cal.App.2d 417, 420 [75 Cal.Rptr. 669], under facts similar to those in the present case. *Holland* holds that there is no requirement in that statute that the agreement to delete uninsured motorist coverage must be signed by both the insured and the insurer. (At p. 420.) As observed in *Pechtel* v. *Universal Underwriters Ins. Co.,* 15 Cal.App.3d 194, 200 [93 Cal.Rptr. 53], "Where the named insured and the insurer clearly have agreed to delete uninsured motorist coverage, the agreement will be upheld." (See also *Myers* v. *National Automobile & Cas. Ins. Co.,* 252 Cal.App.2d 599, 603 [60 Cal.Rptr. 743].)

The declaratory judgment declaring that the insurance policy of CSAA provides uninsured motorist coverage to Abbott for the accident and that Liberty's policy does not afford such coverage is affirmed. The judgment confirming the award of the arbitrator is reversed with directions to vacate the arbitration award and to order a rehearing before the arbitrator on the remaining issues. Abbott and Liberty shall recover their costs on appeal. CSAA shall bear its own costs on appeal.

Sims, J., and Elkington, J., concurred.

---

[6]Section 11580.2, subdivision (a), of the Insurance Code, as it read at the time applicable to this case, provided in part, "The insurer and any named insured, prior to or subsequent to the issuance or renewal of a policy, may, by agreement in writing, delete the provision covering damage caused by an uninsured motor vehicle . . . ."