492 So.2d 1340 (1986)
ESTATES OF FORT LAUDERDALE PROPERTY OWNERS' ASSOCIATION, INC., a Florida Corporation Not-for-Profit, Appellant/Cross-Appellee,
v.
Edna KALET and Carol Kalet, Appellees/Cross-Appellants.
Edna KALET and Carol Kalet, Appellants,
v.
ESTATES OF FORT LAUDERDALE PROPERTY OWNERS' ASSOCIATION, INC., a Florida Corporation Not-for-Profit, Appellee.
Nos. 84-1428, 84-1462.
District Court of Appeal of Florida, Fourth District.
February 5, 1986.
Rehearing Denied September 17, 1986.
*1341 Karen Kantner of Britton, Cassel, Schantz & Schatzman, Fort Lauderdale, for Estates of Fort Lauderdale Property Owners' Ass'n, Inc.
Ronald P. Gossett of Hodges, Gossett, McDonald, Gossett & Crawford, P.A., Hollywood, for Edna Kalet and Carol Kalet.
SALMON, MICHAEL H., Associate Judge.
The Estates of Fort Lauderdale is a mobile home community. It is divided into a family section (82 homes) and an adult section (701 homes). A recorded declaration prohibits permanent residence in the adult section by any person under the age of sixteen. The community was developed by Escom Enterprises, Inc. (the Developer), who did not totally enforce the age restriction. In April, 1979, the right to enforce the restriction was assigned to the association.
The association, when it acquired the right to enforce the restriction undertook to do so. It wrote letters to offenders, it instructed its attorney to write letters, and it filed suits. Four of those suits were consolidated and resulted in a Final Judgment which denied the association relief because of the equitable doctrine of laches, not because of any action of the association, but because the developer had failed to enforce the restriction.[1] The validity and enforceability of the restriction was upheld, and the court admonished the defendants, who were not enjoined from violating the restriction, not to encourage their neighbors to violate the restriction.
The appellee is a long time resident and owner of a residence in the adult section of the community where she has resided with her adult daughter. In late 1982, Ms. Kalet's daughter gave birth, and the child is permanently residing with the appellee; hence this lawsuit. At the conclusion of a non-jury trial, the trial judge found that unequal and arbitrary application of the restriction rendered it unenforceable and that the integrity of the adult community was so severely damaged that to apply the age restriction to the appellee was unreasonable.
No attack is made in this case upon the validity and enforceability of age restrictions in general or with particular reference to the one sought to be enforced. The claim is that the association should not *1342 be permitted to enforce the restriction against the appellee because that would constitute selective and arbitrary enforcement. White Egret Condominium, Inc. v. Franklin, 379 So.2d 346 (Fla. 1979) upheld the validity of age restrictions of the type involved in this case, but denied a right to enforce the restriction if the enforcement was selective and arbitrary. White Egret did not define the term selective and arbitrary enforcement, and rooted the doctrine in estoppel. As the trial judge in the case before us found selective and arbitrary enforcement, we must determine whether that judgment is supported by competent evidence. Ladner v. Plaza Del Prado Condominium Association, Inc., 423 So.2d 927 (Fla. 3d DCA 1983). Ladner is important in another respect. It confirms the rule that laxity of a developer in enforcing the restriction does not constitute selective and arbitrary conduct by the association if the association consistently performed its duty to prevent violations of the restriction prospectively once it obtained the right to do so. We do not find competent evidence to support a finding that the association did anything other than attempt to enforce the restriction whenever it found a violation. We recognize the claim of the appellee that some of the association's action constitutes selective and arbitrary enforcement, but an overall examination of the record discloses a consistent effort by the association to enforce the restriction since it acquired the right to do so.[2] Some of the decisions made were seen by the association as the best course available to insure prospective enforcement of the restriction.
We have carefully examined the appellee's issues on cross appeal, and determine that they are without merit.[3]
Reversed and remanded with instructions to grant the injunctive relief requested in the amended complaint.
HURLEY, J., concurs.
ANSTEAD, J., specially concurs with opinion.
ANSTEAD, Judge, specially concurring:
I concur in the majority opinion and write separately only to especially note the absence of any evidence in this record that the Kalets acted in any way upon reliance of any claimed instances where children were permitted to reside in the development. See Chattel Shipping and Investment, Inc. v. Brickell Place Condominium Association, Inc., 481 So.2d 29 (Fla. 3d DCA 1985). The Kalets did not claim either ignorance of the restriction or deception as to its enforcement. Rather, they relied on the technical fact that several other children actually had been permitted to remain in the development either because of actions of the original developer or by mistaken judgments made in the settlement of other litigation filed to enforce the restriction.

ON REHEARING
PER CURIAM.
The petition for rehearing is denied.
HURLEY, DANIEL T.K., and SALMON, MICHAEL H., Associate Judges, concur.
ANSTEAD, J., dissents with opinion.
ANSTEAD, Judge, dissenting.
Originally, I concurred in this court's majority opinion, which found insufficient proof of prior episodes of selective enforcement by the association to support the lower court's holding, because I believed that a successful claim of selective enforcement *1343 required the petitioners to demonstrate the traditional elements of estoppel. In particular, I would have required a showing of detrimental reliance by the petitioners on the actions or representations of the association, see Chattel Shipping and Investment, Inc. v. Brickell Place Condominium Ass'n, 481 So.2d 29 (Fla. 3d DCA 1985). At trial, the petitioners did put forth evidence of the failure of the association to enforce the restriction against other similarly situated unit owners with children. However, the petitioners never claimed that they relied upon the presence of other children in the development in deciding to have a child. Upon further reflection, I am now of the view that the doctrine of selective enforcement as adopted by the supreme court in White Egret Condominium, Inc. v. Franklin, 379 So.2d 346 (Fla. 1979) does not require a showing of detrimental reliance. Hence I now disagree with the majority opinion in this case as well as the holding of the Third District in Chattel Shipping. I would grant the petition for rehearing, and affirm the trial court's holding that a sufficient showing of selective enforcement was made to bar the condominium association from enforcing the age restriction against the petitioners.
The supreme court's opinion in White Egret does suggest at one point that the doctrine of selective enforcement is grounded in estoppel. 379 So.2d at 352. However, the opinion as a whole does not support that interpretation. The court stated its holding as follows:
Whenever an age restriction is attacked on due process or equal protection grounds, we find the test is: (1) whether the restriction under the particular circumstances of the case is reasonable, and (2) whether it is discriminatory, arbitrary or oppressive in its application.
379 So.2d at 351. The second prong of the test, which concerns the conduct of the association in enforcing the restriction, makes no mention of estoppel or detrimental reliance. It is only at the end of the opinion, in a brief discussion of whether the residency restriction at issue satisfied the second prong of the test, that the court made passing reference to estoppel. Id. at 352. The court's holding that the association was "estopped" from selectively enforcing the age restriction must be viewed in light of the evidence presented to the trial court, which did not indicate that the condominium resident relied in any way upon existing conditions in the development when he decided to purchase the unit and bring his minor children to live with him. Id. at 348. Judging from White Egret's explicit holding that condominium age restrictions are "not constitutionally prohibited unless unreasonably or arbitrarily applied," id. at 348, and the apparent absence of proof of the elements of estoppel under the facts of that case, I no longer believe that a showing of detrimental reliance is required.
Nor can I find any compelling policy reasons to require a showing of detrimental reliance under these circumstances. Although condominium residency restrictions are constitutional, they should be narrowly construed so that they are not arbitrarily used to restrict certain classes of individuals from obtaining desirable housing. White Egret, 379 So.2d at 351. Individuals seeking housing in adult communities presumably do so for a reason, and they depend upon their representatives in the owners association to act in good faith to preserve the atmosphere which attracted them to the community. The uniform enforcement of age restrictions is therefore in the best interest of all residents, and is not a matter to be determined solely according to the equities between association and owner.
Based on the foregoing discussion, I would hold that the trial court's decision was based on competent, substantial evidence and should not be disturbed. The majority opinion acknowledges this evidence, including the finding of the trial court that the condominium association conducted a "sham" lawsuit to give the false impression that it was enforcing the age restriction in good faith against all owners with minor children in the development. *1344 I believe it was within the lower court's province to find that the association acted knowingly and in bad faith in allowing unit owners with children similarly situated as the Kalets to remain, thereby enforcing the age restriction in an unreasonable and arbitrary fashion. White Egret.
There is a paucity of case law from this and other states on age restrictions in condominium communities and the impact of selective enforcement on the validity of these restrictions. The concept of selective and arbitrary enforcement has been applied in other contexts, particularly with regard to the enforcement of criminal laws and regulatory ordinances. However, the reasoning from these cases is not readily transferable to the situation before us. Despite the lack of available guidance from other courts, the problem of what constitutes selective enforcement is likely to arise more frequently as residential developments with restrictions as to age, use of common areas, pets, structural additions, and the like continue to spring up. Because I believe the issue to be one of great public importance, I would also certify to the supreme court the question of whether White Egret requires the unit owner to prove the elements of estoppel in order to prevail on a claim of selective enforcement.
NOTES
[1] These consolidated suits are commonly referred to as the Healy or Betty Healy suit.
[2] The appellee contends that the association did not vigorously pursue the Healy suits, that the stipulation of facts in that suit was inaccurate, that laches would not have applied to all defendants in the Healy suit, and that agreeing to the Healy Final Judgment in itself is selective and arbitrary enforcement.
[3] It is not necessary to decide or discuss the admissibility of Roy Younghan's deposition. The proffered portions have been examined; if admitted they would not have changed the result in the trial court or this court. If failure to admit the deposition was error, it was harmless.