872 So.2d 1003 (2004)
Charlotte SHIELDS, Appellant,
v.
ANDROS ISLE PROPERTY OWNERS ASSOCIATION, INC., Appellee.
No. 4D03-1855.
District Court of Appeal of Florida, Fourth District.
May 12, 2004.
*1004 Bryan J. Yarnell, P.A., West Palm Beach, for appellant.
Lawrence M. Abramson, West Palm Beach, for appellee.
MAY, J.
The rigors of living in compliance with the rules and regulations of a homeowner's association set the stage for this appeal. The homeowner appeals a judgment entered in favor of the association. She challenges *1005 the trial court's interpretation of provisions of the Declaration of Covenants and the consequent injunctive relief granted. She also suggests that genuine issues of material fact precluded entry of a summary judgment on the issue of selective enforcement. We affirm in part and reverse in part.
Charlotte Shields purchased a home in the Andros Isles subdivision. Dissatisfied with the builder, she displayed a sign in her front yard advertising the sale of her house and criticizing the builder. She placed other signs complaining about her home and its builder in the windows of her automobile.
A notice was sent to her concerning the "for sale" yard sign in November 2000. Around that time, the property manager came to her home and gave her a copy of the applicable sections of the Declaration. He told her to reduce the size of her "for sale" sign to not greater than two square feet in area to be in conformity with the rules. Accordingly, she reduced the size of her sign as instructed.
Notices about the signs were again sent in October and November 2001. This time, the association demanded that she remove all the signs because they violated the Declaration.
On January 7, 2002, the association filed a complaint against the homeowner for temporary and permanent injunctive relief.[1] Following a temporary relief hearing, the trial court entered an order granting a temporary injunction that enjoined the homeowner from posting signs on her lot, but denied relief with respect to the signs posted in her automobile windows.
The homeowner filed a motion for partial summary judgment, requesting the court to find that the signs displayed in her automobile windows were not in violation of the Declaration. The association filed a response and counter-motion for summary judgment. It requested the court to find the Declaration not only prohibited the sign in her yard, but those in the windows of her automobile.
The homeowner filed a reply, response, and counter-motion for summary judgment. She alleged selective enforcement and waiver as affirmative defenses. She also filed an affidavit attaching photographs of several other sign violations.
The court heard the motions for summary judgment, and granted the association's motion. The court held that "Article VIII, Section 8, of the Declaration providing `no sign of any kind shall be displayed to public view on any lot ...' encompasses the signs displayed in Defendant's vehicle." The court also found that "Article VIII, Section 11 of the Declaration, which provides a prohibition against signage on vehicles, also encompasses a prohibition against the signs displayed in Defendant's vehicle." The court reserved ruling on costs and attorneys fees.

Interpreting the Declaration
Well-established rules of construction control our review and interpretation of the Declaration. Written documents, including declarations, and the legal effects to be drawn therefrom, are essentially questions of law. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126 (Fla.2000); Royal Oak Landing Homeowner's Ass'n v. Pelletier, 620 So.2d 786 (Fla. 4th DCA 1993).
"Restrictions found within a Declaration are afforded a strong presumption of validity, and a reasonable unambiguous restriction will be enforced according to *1006 the intent of the parties as expressed by the clear and ordinary meaning of its terms...." Emerald Estates Cmty. Ass'n, v. Gorodetzer, 819 So.2d 190, 193 (Fla. 4th DCA 2002). However, "[r]estrictive covenants are not favored and are to be strictly construed in favor of the free and unrestricted use of real property." Wilson v. Rex Quality Corp., 839 So.2d 928, 930 (Fla. 2d DCA 2003) (citing Moore v. Stevens, 90 Fla. 879, 106 So. 901, 903 (1925)). "Due regard must be had for the purpose contemplated by the parties to the covenant, and words used must be given their ordinary, obvious meaning as commonly understood at the time the instrument containing the covenants was executed...." Id. (quoting Moore, 106 So. at 903). "Any doubt as to the meaning of the words used must be resolved against those seeking enforcement." Id.
The homeowner argues that the trial court misinterpreted sections 8 and 11 of the Declaration. We agree in part. Section 8 states "[n]o signs of any kind shall be displayed to public view on any Lot except one sign of not more than two (2) square feet advertising such Lot for sale or rent." (Emphasis added.) A "Lot" is defined by the Declaration as "any plot of land within" Andros Isle including the "[r]esidence and all improvements constructed on a Lot." Relying on Wilson, the homeowner argues that section 8 clearly and unambiguously applies only to "any plot of land." In that case, the second district reasoned that in applying the ordinary and obvious meaning of the words utilized, a similarly worded provision applied only to lots and not vehicles. We agree. The court erred in applying this provision to the signs inside the automobile windows.
The question then becomes whether section 11 encompasses signs located within the interior of an automobile. Section 11 states that "[n]o vehicles, except four wheeled passenger automobiles ... with no lettering or signage thereon, shall be placed, parked or stored upon any Lot...." The homeowner argues that section 11, which specifically applies to automobiles and signage thereon, only prohibits signage "thereon," not "therein". Riser v. Fed. Life Ins. Co., 207 Iowa 1101, 224 N.W. 67, 68 (1929) (When used to designate location, the prepositions "in" and "on" are never synonymous. "In" means within the interior, "on" mean upon the surface.) The association responds that section 11 prohibits signs anywhere on the vehicle. Once again, we agree with the homeowner.
"Thereon" is defined as "[o]n or upon this, that, or it." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, 1335 (New College ed.1981). "Therein" is defined as "[i]n that place or context." Id. The clear and ordinary meaning of the term "thereon" suggests that the signs located within the interior of the homeowner's car do not violate section 11 of the Declaration.
The language employed in section 11 as a whole does not suggest an intent to prohibit interior vehicle signs displayed to criticize the builder's workmanship. Rather, as worded, the section allows four wheeled passenger automobiles, standard sized pick ups not exceeding a one-ton capacity, sports utility vehicles, and passenger vans to be placed, parked, or stored on a Lot. It disallows larger four wheeled vehicles, which tend to be commercial or recreational in nature. Typically, what sets personal use vehicles apart from commercial vehicles is not only their size, but the signage or lettering on the vehicle advertising their business. Thus, section 11 is aimed at prohibiting four wheeled vehicles of a recreational or commercial nature from parking on any lot in plain view, not from prohibiting residents from *1007 hanging signs in their car windows. The trial court misinterpreted section 11 as a matter of law and erred in applying it to prohibit the signs in the homeowner's vehicle.

Selective Enforcement
Lastly, the homeowner argues that the undisputed evidence established that the association selectively enforced the Declaration against her. She presented evidence showing: 1) 124 violations of the sign restrictions; 2) the association's new board was aware of the nonconforming signs; and 3) the new board sent only 11 violation notices to homeowners. "When selective enforcement is demonstrated, the association is `estopped' from applying a given regulation." Chattel Shipping & Inv., Inc. v. Brickell Place Condo. Ass'n, 481 So.2d 29, 30 (Fla. 3d DCA 1985) (citing White Egret Condo., Inc. v. Franklin, 379 So.2d 346, 352 (Fla. 1979)).
Viewing all inferences in favor of the homeowner, the association failed to conclusively show the absence of genuine issues of material fact on this issue. See Holl v. Talcott, 191 So.2d 40 (Fla.1966). The trial court erred in granting the association's motion for summary judgment in this regard.[2]
The judgment is reversed as it relates to the signs inside the automobile. To the extent the judgment enjoined the homeowner concerning the "for sale" sign based upon its noncompliance with the Declaration, it is affirmed subject to further proceedings concerning the issue of selective enforcement.
HOROWITZ, ALFRED J., Associate Judge, concur.
KLEIN, J., concurring in part and dissenting in part.
KLEIN, J., concurring in part and dissenting in part.
I concur with that portion of the opinion concluding there are issues of fact as to selective enforcement. I dissent from that portion of the opinion concluding that there is a distinction between a sign on the inside of a window of a vehicle and a sign on the outside of a vehicle.
Ms. Shields acknowledged in her deposition that signs were "attached on the inside of the windows" of her vehicle facing out. The majority agrees that "thereon" as used in the restriction means "on." I see no difference between a sign being "on" the inside surface of a window or being "on" the outside surface.
Words, as the majority recognizes, should be given their "ordinary, obvious meaning as commonly understood." I submit that any reasonable person, if asked whether there was a sign "on" this vehicle, would answer yes. The majority appears to have been persuaded by the fact that the sign also happens to be in the vehicle; however, that fact does not preclude the sign from being on the vehicle. I would affirm the summary judgment in that respect.
NOTES
[1] The developers transferred control of the Board of Directors to the homeowners association in December 2002.
[2] The homeowner also argues that the association has waived its right to enforce the sign restrictions. Waiver, if any, by the developer-controlled board cannot be imputed to the new board that has consistently sought to enforce the sign restrictions against this homeowner. This court has previously held that a new board may enforce restrictions which were unenforced by a prior board where the "overall examination of the record discloses a consistent effort by the association to enforce the restriction since it acquired the right to do so." Estates of Fort Lauderdale Prop. Owners Ass'n v. Kalet, 492 So.2d 1340, 1342 (Fla. 4th DCA 1986). There is no genuine issue of material fact as to this issue.